IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01320-EWN-CBS

TIMOTHY J. NELSON,
        Plaintiff,
v.

UNITED STATES BUREAU OF LAND MANAGEMENT;
UNITED STATES DEPARTMENT OF THE INTERIOR;
DOES I-X;
        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) the Federal Defendants' Motion

for Summary Judgment (filed April 1, 2005) (doc. # 22);  and (2) Plaintiff's Motion for

Summary Judgment (filed May 11, 2005) (doc. # 30).   Pursuant to the General Order of

Reference dated June 30, 2004 and the memoranda dated April 4, 2005 (doc. # 23)

and May 11, 2005 (doc. # 31), the Motions were referred to the Magistrate Judge "to

submit to me proposed recommendations for my disposition of any motion . . . to

dismiss the entire action involuntarily."   The court has reviewed the Motions, Nelson's

Memorandum of Law in Opposition (filed May 11, 2005) (doc. # 34), the Federal

Defendants' Reply (filed June 6, 2005) (doc. # 39), the Federal Defendants' Response

(filed June 7, 2005) (doc. # 40), the Joint Status Report (filed July 6, 2005) (doc. # 47),

1

the exhibits and affidavits, the entire case file, and the applicable law and is

sufficiently advised in the premises.

I.      Statement of the Case

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, "provides the public

with a right of access to federal agency records." *Casad v. United States Dept. of*

*Health & Human Servs.*, 301 F.3d 1247, 1250 (10th Cir. 2002) (internal quotation

marks and citation omitted).  "The right of access, however, is subject to nine

exemptions." *Id.*  "Congress created these exemptions because it realized that

legitimate governmental and private interests could be harmed by release of certain

types of information." *Id.* (citing 5 U.S.C. § 552).  "Federal courts are granted the

authority to enjoin the agency from withholding records, . . . to determine whether

records fall within the statutory exemptions listed in 5 U.S.C. § 552(b)," and to order

the production of any agency records improperly withheld from the complainant.

*Casad*, 301 F.3d at 1251 (internal quotation marks and citation omitted); 5 U.S.C. §

552(a)(4)(B).

Proceeding *pro se*, Nelson filed the Complaint on June 28, 2004, alleging

violation of FOIA.  On or about September 17, 2003, Nelson submitted a FOIA request

to the Bureau of Land Management ("BLM") seeking documents related to the BLM's

efforts to acquire the Ballardini Ranch, located southwest of Reno, Nevada, pursuant

2

to the Southern Nevada Public Land Management Act of 1998 ("SNPLMA"). (*See* Exhibit A to Complaint (September 17, 2003 letter to BLM)).[1]

By letter dated November 21, 2003, the BLM's Nevada Office responded to Nelson's initial FOIA request. (*See* Exhibit B to Complaint; Exhibit A-1 to Defendants' Motion at ¶ 5). Nelson was provided 106 pages of responsive documents, while 24 pages were withheld in whole or in part under Exemption 5 or Exemption 6. (*See id.*; Exhibit A-8 to Defendants' Reply at ¶ 3). By a letter dated December 17, 2003, Nelson administratively appealed the BLM's decision pursuant to Exemption 5 "to redact portions of seven (7) pages of documents ‹containing material that is deliberative and pre-decisional in nature' and to withhold an additional ten (10) pages of documents as ‹pre-decisional and deliberative documents.' " (Exhibit C to Complaint (quoting Exhibit B to Complaint); Exhibit A-1 to Defendants' Motion at ¶ 6). Nelson did not appeal the withholding of documents under Exemption 6. (Exhibit A-1 to Defendants' Motion at ¶ 6).

Nelson filed this civil action on June 28, 2004.[2] Nelson alleges that "[t]he BLM and DOI have wrongfully, in violation of the FOIA, redacted and otherwise withheld records and information requested by Nelson under the FOIA and continue to do so." (Complaint at ¶ 11). A total of twelve e-mail messages have been withheld in full and three e-mail messages have been withheld in part pursuant to Exemption 5 of FOIA. (*See* Defendants' Exhibit A-1 at ¶¶ 10-12, 15-25, 27, 32, 38, and 44; Joint Status Report at pp. 2-5, 6-7). Defendants have moved for summary judgment on the

grounds that they have properly withheld the e-mail messages pursuant to Exemption 5 of FOIA. Nelson has opposed Defendants' motion and moved for summary judgment in his favor on the grounds that Defendants have "failed to adequately search for responsive documents" and "failed to meet [their] burden of showing that the withheld documents fall within the scope of FOIA's ‹deliberative process' exemption." (Nelson's Memorandum of Law in Opposition at p. 1).

II.     Standard of Review

"In a FOIA case, as in all others in the federal system, summary judgment may be granted only if the moving party proves that no substantial and material facts are in dispute and that [movant] is entitled to judgment as a matter of law." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (internal quotation marks and citation omitted).

> Summary judgment is proper when the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The party opposing a properly supported summary judgment motion may not rest upon mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. A factual dispute is material only if, under governing law, its resolution might affect the action's outcome. A factual dispute is genuine only if a reasonable fact finder could return a verdict for the nonmoving party.

*Gersh & Danielson v. U.S. E.P.A.*, 871 F. Supp. 407, 409 (D. Colo. 1994) (citations omitted).

"Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light

4

most favorable to the FOIA requester." *Miller v. U.S. Dept. of State*, 779 F.2d 1378,

1382 (8th Cir. 1985) (citing *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1350

(D.C. Cir.1983)).  "In order to discharge this burden, the agency 'must prove that each

document that falls within the class requested either has been produced, is

unidentifiable, or is wholly exempt from the Act's inspection requirements.' " *Miller*,

779 F.2d at 1382-83 (quoting *National Cable Television Ass'n, Inc. v. Federal*

*Communications Comm'n*, 479 F.2d 183, 186 (D.C. Cir.1973)).  One means for the

agency to discharge its burden "is the use of a 'Vaughn index,' a routine device

through which the agency describes the documents responsive to a FOIA request and

indicates the reasons for redactions or withholdings in sufficient detail to allow a court

to make an independent assessment of the claims for exemptions from disclosure

under the Act." *Rugiero v. U.S. Dept. of Justice*, 257 F.3d 534, 544 (6th Cir. 2001)

(citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 534 U.S. 1134

(2002)).  (*See* Exhibit A-1 at ¶ 7and Exhibit A-2 at ¶ 12 to Defendants' Motion; Exhibit A-

7 to Defendants' Reply at ¶ 2).

III.   Analysis

A.   Nelson argues that Defendants have failed to conduct an adequate search for

documents responsive to his requests.

       In response to a FOIA request, an agency must make a good faith effort
       to conduct a search for the requested records using methods
       reasonably expected to produce the requested information.  The FOIA

requires a reasonable search tailored to the nature of the request.  At all times the burden is on the agency to establish the adequacy of its search.  In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search.  In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA.  The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request.

*Rugiero*, 257 F.3d at 547 (internal quotation marks and citation omitted).

Summary judgment is proper in a FOIA action when the agency demonstrates that its search was reasonably calculated to uncover all relevant documents. *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. United States Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Washington Bureau v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).  "The affidavits must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (internal quotation marks and citation omitted).  "[T]he search need only be reasonable; it does not have to be exhaustive." *Miller*, 779 F.2d at 1383 (citing *Shaw v. U.S. Department of State*, 559 F. Supp. 1053, 1057 (D.D.C.1983)).  "An agency may

prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Miller*, 779 F.2d at 1383 (citing *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir.1978)).

Defendants have provided the declarations of Richard H. Brown, Mervyn G. Boyd, and Mark G. Struble as evidence of compliance with FOIA. (*See* Amended Exhibit A-6 to Defendants' Motion; Exhibits A-8 and A-9 to Defendants' Reply). Defendants conducted a search of the records in both of the BLM offices in the State of Nevada, as well as the Washington Office. (*See* Amended Exhibit A-6 at ¶¶ 3, 6-8; Exhibit A-8 at ¶ 3). The Washington Office found 16 documents, all of which were provided to Nelson. (Amended Exhibit A-6 at ¶ 10). The Las Vegas Field Office found 114 responsive documents (Amended Exhibit A-6 at ¶ 5), 90 of which were provided to Nelson. A later search of records at the Las Vegas Field Office revealed one additional document that has been released to Nelson. (Exhibit A-8 at ¶ 7). The Carson City Field Office did not locate any responsive documents. (*See* Amended Exhibits A-6 at ¶ 10; Exhibit A-9). The evidence demonstrates that Defendants conducted a thorough search for documents responsive to Nelson's requests.

In light of the evidence provided by Defendants, Nelson must either produce evidence contradicting the adequacy of the agency's search or evidence of the agency's bad faith. *See Miller*, 779 F.2d at 1384. Nelson merely makes a conclusory argument that Defendants "conducted far too narrow a search – and did not even

produce documents that the USFS found and produced . . . ." (Nelson's Memorandum in Opposition at p. 33).    "[A] search is not unreasonable simply because it fails to produce all relevant material . . . ." *See Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).  *See also Perry*, 684 F.2d at 128 (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).  The fundamental question is "not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.' " *Steinberg v. United States Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  "An agency is not required to search every document in the system," *Oglesby*, 920 F.2d at 68, or "every record system." *Western Center for Journalism v. I.R.S.*, 116 F. Supp. 2d 1, 9 (D.D.C. 2000) (citation omitted).

The fact that Nelson was able to find a handful documents through another source, the Forest Service, is not necessarily indicative of an inadequate search. *Canning v. U.S. Dept. of Justice*, 919 F. Supp. 451, 459-60 (D.D.C. 1994).  *See also Miller*, 779 F.2d at 1386 (stating that discovery of additional responsive documents is not conclusive of bad faith); Exhibit A-8 to Defendants' Reply at ¶¶ 5-7 (describing further search conducted between May 19 and June 3, 2005).  Defendants were not required to closely analyze every piece of responsive information for clues as to the location of additional responsive documents.

The record in this case demonstrates that Defendants' search for the requested documents was reasonably complete and thorough. Defendants undertook an extensive search and produced numerous documents. The fact that Defendants failed to produce every possibly responsive document does not demonstrate bad faith. Nelson has not presented any evidence contradicting the adequacy of the search conducted or demonstrating any improper motive or deceit on the part of the Defendants. Defendants have presented evidence that "explain[s] in reasonable detail the scope and method of the search conducted by the agency" and "suffice[s] to demonstrate compliance with the obligations imposed by the FOIA." *Perry*, 684 F.2d at 127.

B.      Nelson argues that Defendants have not described the withheld documents with sufficient specificity to establish that they fall under Exemption 5.  (*See* Nelson's Memorandum in Opposition at pp. 23-25).  The court disagrees.

"A district court may grant summary judgment to the government in a FOIA case only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson v. I.R.S.*, 56 F.3d 832,836 (7th Cir. 1995) (internal quotation marks and citations omitted).  Because only the agency knows the substance of the withheld information, the agency affidavits are important in a FOIA case.  Both the court and the requester

must look to the affidavits for an explanation of the agency's decision to withhold information.  An affidavit that contains merely a "categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."  *PHE, Inc. v. Dept. of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) (internal quotation marks and citations omitted).  However, the government need not provide such a detailed affidavit that it effectively discloses the information shielded by the claim of exemption.  *See Hale v. U.S. Dept. of Justice*, 99 F.3d 1025, 1031 n. 6 (10th Cir. 1996).  The government can meet its burden on summary judgment "by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions."  *Hanson v. U.S. Agency for Intern. Development*, 372 F.3d 286, 290 (4th Cir. 2004) (citation omitted).

Here, the agency affidavits contain much more than categorical descriptions of withheld documents and the reasons for withholding them.  The Harris Declarations describe the withheld documents and the justifications for nondisclosure with substantial specificity.  The many released and redacted documents also show the requester and the district court what kind of information was not disclosed and why. *See Fiduccia v. U.S. Dept. of Justice*, 185 F.3d 1035, 1043 (9th Cir. 1999) (redacted documents may also enable the requester to understand from the context what type of information is being withheld).  The court concludes that Defendants' explanations are sufficient "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding."

*Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991) (internal quotation marks and citation omitted).

C.     Nelson asserts that Defendants have "failed to meet [their] burden of showing that the withheld documents fall within the scope of FOIA's ‹deliberative process' exemption." (Nelson's Memorandum in Opposition at p. 1).

"FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed." *Casad*, 301 F.3d at 1251 (internal quotation marks and citation omitted). "If an agency has been sued by an individual because the agency has refused to release documents, the agency bears the burden of justifying nondisclosure." *Id.* "In any FOIA action challenging an agency decision to withhold records, the district court reviews de novo the agency's decision not to disclose." *Id.* "The district court must determine as to each withheld document whether it is shielded by the claimed exemption." *Gersh & Danielson*, 871 F. Supp. at 409 (citation omitted).

Exemption 5 provides that FOIA disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," that is, documents that a private party could not obtain from an agency in civil discovery. 5 U.S.C. § 552(b)(5). The privileges that are incorporated into Exemption 5 include the deliberative process privilege. *Trans Union LLC v. Federal Trade Commission*, 141 F.

11

Supp. 2d 62, 69 (D.D.C. 2001).  "This deliberative process privilege rests on the

obvious realization that officials will not communicate candidly among themselves if

each remark is a potential item of discovery and front page news, and its object is to

enhance the quality of agency decisions by protecting open and frank discussion

among those who make them within the Government." *Casad*, 301 F.3d at 1251

(internal quotation marks and citation omitted).

"One class of memoranda shielded by Exemption 5 includes agency reports

and working papers subject to the executive privilege for predecisional deliberations."

*Casad*, 301 F.3d at 1251 (internal quotation marks and citation omitted).  The

deliberative process privilege "shelters documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *Petroleum Information Corp. v.*

*United States Dept. of the Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal

quotation marks and citation omitted).

"To fall within the deliberative process privilege, a document must be both

predecisional and deliberative. " *Moye, O'Brien, O'Rourke, Hogan, & Pickert v.*

*National Railroad Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004) (internal

quotation marks and citation omitted), *reh'g and reh'g en banc denied*, 120 Fed. Appx.

787 (11th Cir. (Fla.) Sept. 14, 2004).  *See also Carter v. United States Dept. of*

*Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002) (same) (citation omitted).  "Both

terms have come to apply only to documents that contribute to an ongoing deliberative

*process* within an agency." *Access Reports v. Dept. of Justice*, 926 F.2d 1192,

1195(D.C. Cir. 1991) (emphasis in original).

"A predecisional document is one prepared in order to assist an agency

decision-maker in arriving at his decision," rather than to support a decision already

made, "and may include recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions of

the writer rather than the policy of the agency." *Moye*, 376 F.3d at 1277 (internal

quotation marks and citation omitted). "Material is deliberative if it reflects the give-

and-take of the consultative process." *Petroleum Information Corp.*, 976 F.2d at 1433

(internal quotation marks and citation omitted). "To fall within the deliberative process

privilege, materials must bear on the formulation or exercise of agency policy-oriented

*judgment. Petroleum Information Corp.*, 976 F.2d at 1435 (citation omitted)

(emphasis in original). "The deliberative process privilege . . . is centrally concerned

with protecting the process by which *policy* is formulated." *Petroleum Information

Corp.*, 976 F.2d at 1435 (citations omitted) (emphasis in original). "[C]ourts must

focus on the effect of the material's release and conclude that [p]redecisional

materials are privileged to the extent that they reveal the mental processes of

decisionmakers." *Moye*, 376 F.3d at 1278 (internal quotation marks and citation

omitted). *See also Carter*, 307 F.3d at 1090 (same) (internal quotation marks and

citation omitted). "To the extent that predecisional materials, even if factual in form,

reflect an agency's preliminary positions or ruminations about how to exercise

13

discretion on some policy matter, they are protected under Exemption 5." *Petroleum Information Corp.*, 976 F.2d at 1435.

The e-mails at issue in this case were generated by federal officials following (1) the publication of an article in the Reno Gazette-Journal on August 13, 2003, and (2) a letter dated August 19, 2003 from representatives of the owners of the Ballardini Ranch to Gale Norton, Secretary of the Interior, stating that the owners were no longer "willing sellers" under the requirements of the SNPLMA. (*See* Exhibit A-2 to Defendants' Motion at ¶¶ 6, 9). These two events generated e-mail communications among federal officials regarding how to respond to misinformation in the article and how to clarify for the public the BLM's position regarding the Ballardini Ranch. (*See* Exhibit A-2 to Defendants' Motion at ¶¶ 7- 8, 11).

"The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fishbowl." *Carter*, 307 F.3d at 1090 (internal quotation marks and citation omitted). "[T]he process of selecting among alternative policies can be delicate and audience-sensitive, susceptible to distortions and vulnerable to fudging when the deliberators fear or expect public reaction." *Petroleum Information Corp.*, 976 F.2d at 1435. The court must "focus on the effect of the materials' release: the key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter*, 307 F.3d at 1090 (internal quotation marks

14

and citation omitted).  Predecisional "materials are privileged to the extent that they reveal the mental processes of decision-makers."  *Id.*

The court determines that Defendants properly withheld the e-mails at issue in this civil action under FOIA's Exemption 5.  The e-mails that comprise Documents 1, 2, 3, 4, and 5 reflected personal opinion, mental processes, deliberations, judgment, and recommendations of the authors.  Some of the e-mails predated final policy decisions by the BLM regarding the Ballardini Ranch.  Some of the e-mails contained discussion of drafts of a final letter terminating efforts to acquire the Ballardini Ranch. Some of the e-mails were from subordinate employees to supervisors.  (*See* Exhibit A-2 to Defendants' Motion at ¶ 12; Exhibit A-1 to Defendants' Motion at ¶¶ 10-12, 23, 24-25, 32).  The issues surrounding the Ballardini Ranch had generated misinformation in a newspaper article and public interest and dissent.  The withheld documents involved the formulation of responses, communications, and final *policy* decisions by the BLM regarding the Ballardini Ranch.  (*See* Exhibit A-1 to Defendants' Motion at ¶¶ 10-25, 27, 31-32, 37-38, 43-44; Exhibit A-7 to Defendants' Reply at ¶¶ 7-9,11).  The documents at issue were properly withheld in order to shelter "material implicating officials' exercise of judgment about policy matters."  *Petroleum Information Corp.*, 976 F.2d at 1435.

D.     Defendants have sufficiently demonstrated that the portions of the documents withheld in part are not segregable from the disclosed material.  *See Rugiero*, 257

15

F.3d at 553 ("agency has the burden to show that portions withheld are not segregable from the disclosed material") (citation omitted); Exhibit A-1 to Defendants' Motion at ¶ 8).

E.     Nelson asks the court to conduct an *in camera* review of the e-mails that are the subject of this lawsuit.  As the court has determined that Defendants' response to Nelson's FOIA request was sufficient and that the documents in question were properly withheld,  the court need not conduct an *in camera* review.  *See Rugiero*, 257 F.3d at 543 (encouraging "use of *in camera* review sparingly, when no other procedure allows review of the agency's response to a FOIA request") (citation omitted); *Young v. C.I.A.*, 972 F.2d 536, 539 (4th Cir. 1992) (holding that the district court did not abuse its discretion in "accept[ing] the credibility of the affidavits" and not taking the additional step of examining the contested documents *in camera*) (citation omitted).

F.     BLM not a Proper Party Defendant

"The jurisdiction of this Court to enforce FOIA is limited to enjoining agency noncompliance."  *Whittle v. Moschella*, 756 F. Supp. 589, 596 (D.D.C.1991) (citing 5 U.S.C. § 552(a)(4)(B).  FOIA defines "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . or any independent

16

regulatory agency."  5 U.S.C. § 552(f).  The BLM is a "constituent bureau" of the Department of the Interior ("DOI").  43 C.F.R. § 2.46.  The BLM does not fall within any of the categories set forth in § 552(f), and thus, is not an agency for purposes of FOIA. *See also* 5 U.S.C. §§ 101, 102, 103.  The DOI is listed in FOIA among the cabinet-level agencies that fall within the definition of executive department, 5 U.S.C. § 101, and is the only proper defendant named in this civil action.

G.      John Does I-X not Proper Party Defendants

There is no provision in the Federal Rules of Civil Procedure for the naming of fictitious or anonymous parties in a lawsuit.  *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388 (10th Cir. 1984);  *Coe v. U.S. Dist. Court for Dist. of Colorado*, 676 F.2d 411, 415 (10th Cir. 1982).  To the contrary, the Federal Rules of Civil Procedure provide:

> "[e]very pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a).  In the complaint, the title of the action shall include the names of all the parties . . . ."

Fed. R. Civ. P. 10(a).  Further, individual officers or employees of federal government agencies are not proper parties to a FOIA action.  *Gary Energy Corp. v. U.S. Dept. of Energy*, 89 F.R.D. 675, 676-77 (D. Colo. 1981).  Because: (1) anonymous parties are not permitted by the Federal Rules of Civil Procedure, (2) individual employees of federal agencies are not proper parties to a FOIA action, (3) the time period established by the Scheduling Order for amending the complaint and adding parties

expired on January 28, 2005, and (4) Nelson has not identified the anonymous Defendants, the John Doe Defendants I through X are properly dismissed from this action.

Accordingly, IT IS RECOMMENDED that:

1.     Plaintiff's Motion for Summary Judgment (filed May 11, 2005) (doc. # 30) be DENIED.

2.     The Federal Defendants' Motion for Summary Judgment (filed April 1, 2005) (doc. # 22) be GRANTED; and

3.     Judgment on the Complaint be entered in favor of Defendants and against Plaintiff, with each party to bear his, her, or its own costs and attorney fees.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is

made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those

19

portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992)

(by their failure to file objections, plaintiffs waived their right to appeal the magistrate's

ruling).

DATED at Denver, Colorado, this 13th day of July, 2005.

BY THE COURT:


s/Craig B. Shaffer
Craig B. Shaffer
United States Magistrate Judge


1.      Nelson is associated with Evans Creek, LLC ("Evans Creek"), a limited liability
company that purchased the 1,019-acre Ballardini Ranch in 1998 with the intent to
develop it.  On August 12, 2004, Evans Creek initiated a lawsuit against Washoe
County in federal court in Nevada, alleging that the County unlawfully hindered Evans
Creek's efforts to develop the Ballardini Ranch property.  (*See* Exhibit AA to Nelson's
Memorandum in Opposition).

2.      Because the BLM did not make a determination on Nelson's administrative
appeal within 20 days after the appeal was filed, Nelson is deemed to have
exhausted his administrative remedies prior to filing this civil action.  (*See* 5 U.S.C. §§
552(a)(6)(A)(ii) and (a)(6)(C); Exhibit D to Complaint).